**Jerald D. MEADOWS, Appellant,**

v.

**Mary Ann MEADOWS, Appellee.**

**No. 52490.**

Supreme Court of Oklahoma.

Oct. 28, 1980.

As Corrected Dec. 11, 1980.

Robert H. Galbraith, Ponca City, for appellant.

Brian T. Hermanson, Phipps, Johnson & Holmes, Ponca City, for appellee.

DOOLIN, Justice:

This appeal arises from a conviction for indirect contempt of court. Appellee Mary Ann Meadows and Appellant Jerald D. Meadows were married in 1973. In 1976, a divorce was granted to Mary Ann Meadows (wife) on the grounds of incompatibility. A property distribution was made by the court, as well as a division of the debts of the marriage. The court ordered Jerald D. Meadows (husband) to pay support alimony in the amount of $3,320.00, payable at the rate of $100.00 per month, with a final payment of $120.00. Husband was also ordered to pay $200.00 temporary support and $200.00 temporary attorney's fees. In March 1977, contempt proceedings were instituted by wife under the divorce decree. A jury found the former husband (husband) guilty of contempt of court.[1]

1. We distinguish *Potter v. Wilson*, 609 P.2d 1278 (Okl.1980), which decided an analogous issue but held, "If a debt be ordered paid as integral part of an award for support alimony

■ The evidence at the trial showed that the husband, a paraplegic, had income of $335.00 per month in Social Security Disability payments, $20.00 per week from CARE and $41.00 per week from Workers' Compensation, for an income of at least $579.00 per month. Husband made no objections at trial, but now claims introduction of these amounts into evidence is fundamental error. Husband bases his claim on two statutes, the first of which is 85 O.S.1971 § 48 which states in part:

"Claims for compensation for benefits due from Workers' Compensation Act shall not be assigned, released or commuted except as provided by the Workers' Compensation Act and shall be exempt from all claims of creditors, and from levy of execution or attachment or other remedy for recovery or collection of a debt, which exemption may not be waived."

Oklahoma case law and the majority of decisions on this point do not support husband's position. "[I]t is generally held that statutes exempting property from legal process in the enforcement of a claim against the husband are not applicable to a claim for alimony or support." [2]

■ The exemption provisions such as the one in 85 O.S.Supp.1971 § 48 were enacted to exempt funds from the claims of creditors. The principal reason for these exemptions is to protect the dependents of the party claiming the exemption. The exemption statute should not be a device to relieve the workman from his obligation to support his wife and family. Other jurisdictions also have held that a decree for alimony was not a debt within the meaning of the constitutional and statutory provisions exempting a husband's wages from the claims of creditors.[3] The Oklahoma Supreme Court has held that with regard to alimony to be paid from a Workers' Compensation Award, a wife is not a creditor nor her claim a debt, *Commons v. Bragg*, 183 Okl. 122, 80 P.2d 287 (1938). The Oklahoma Court, in *Commons*, in interpreting a very similar statute to the present one, held that the Workers' Compensation Award was not exempt from the claim for alimony. Because we see no sound reason to depart from these principles, we hold that Workers' Compensation Awards may be considered in a contempt proceeding arising from a failure to pay alimony. To hold otherwise would subvert the intention of the legislature by allowing a husband who has been ordered to support his former wife to escape his legal duty.

Husband further contends that 42 U.S.C. § 407 supports his position that Social Security Disability payments are exempt from legal process and that evidence of the payments should not have been considered in the contempt trial. That statute provides:

42 U.S.C. § 407:

"The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the monies paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process or to the operation of any bankruptcy or insolvency law."

■ There have been few cases in this area, but the majority of jurisdictions follow similar reasoning as that used in permitting Workers' Compensation Awards to be considered. "The intent behind the exemption in the Social Security Act is to protect the appellant [debtor] and those dependent upon him from the claim of creditors. Appellee's request for alimony, dif-

---

[as opposed to property settlement alimony], contempt becomes a permissible mode of enforcement."

**2.** 24 Am.Jur.2d, Divorce & Separation § 721, Oklahoma is in accord, see *Commons v. Bragg*, 183 Okl. 122, 80 P.2d 287 (1938), 54 A.L.R.2d 1435 § 6(f); *Huskey v. Batts*, 530 A.2d 1375 (Okl.App.1975); *Umber v. Umber*, 591 P.2d

299, 301 (Okl.1979), Social Security benefits and *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), Ry. Retirement benefits.

**3.** *Littleton v. Littleton*, 224 Ala. 103, 139 So. 335 (1932); *Caldwell v. Central of Georgia Ry.*, 158 Ga. 392, 123 S.E. 708 (1924).

ferent from the claim of a creditor, is unaffected by the exemption set forth in Section 407." [4] This reasoning has been also followed in Oklahoma, *Huskey v. Batts*, 530 P.2d 1375 (Okl.App.1974).

■ Although husband concedes that *Huskey* is the law in Oklahoma, he urges the passage of 42 U.S.C. § 659(a) in 1975 strongly expresses Congressional intent that Social Security Disability payments should not be considered in alimony cases. 42 U.S.C. § 659(a) provides that:

> ... monies (the entitlement to which is based upon remuneration for employment) ... shall be subject ... to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments.

This statute further provides a way for alimony judgments to be enforced against federal employees. Previously it was impossible to enforce an alimony debt against a federal employee because the federal government could not be ordered to obey a state garnishment writ. The legislative history does not support husband's contention that Congress intended to prohibit evidence of receipt of social security disability payments from being introduced in setting alimony or contempt proceedings for the enforcement of alimony. Congress was merely attempting to deal with a particular situation where federal employees refuse to make their alimony or support payments, and then hide behind the cloak of sovereign immunity.[5] No further result of the law was intended, and we will not interpret 42 U.S.C. § 659(a) in such a manner that expands the intent of Congress.

■ Husband finally contends that testimony of former wife (wife) that she did not want him placed in jail was fundamental error. Husband made no objection at the time, but now feels that the remark reduced the jury's vigilance and responsibil-

ity to weigh the evidence. The term "fundamental error" is not subject to precise definition. Generally, fundamental error is error which renders a judgment void. The due process guaranty of the constitution requires, among other things, notice, the right to be heard before a fair and impartial tribunal and the right to confront witnesses, and before a party's due process rights are violated, it must be shown that the action or error was arbitrary, oppressive and shocking to the conscience of the court.[6] Careful review of the evidence reveals no lack of due process. Husband has cited no cases in support of his contention that wife's statement regarding possible punishment to be assessed against her former husband denied him due process of law. It is well settled in Oklahoma that assignments of error will not be considered favorably under such circumstances where, without further research, it does not appear they are well taken.[7]

The jury's only duty in this case was to decide if the husband was in contempt of the court's ruling. The jury found that appellant was guilty of contempt, and there is absolutely no evidence in the record that the jury was influenced by appellee's testimony that she merely wanted her money and had no particular desire to have her former husband placed in jail. The record is clear and convincing that the appellant wilfully disobeyed a valid court order, and thus he is guilty of indirect contempt.

AFFIRMED.

IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES, SIMMS, HARGRAVE and OPALA, JJ., concur.

LAVENDER, C. J., concurs in result.

---

4. *Brown v. Brown*, 32 Ohio App.2d 139, 141, 288 N.E.2d 852 (1972).

5. U.S.Code Cong. and Admin.News, 93rd Congress, 2d Session, pp. 8133, 8157.

6. *Rochin v. People of California*, 342 U.S. 165, 172-3, 72 S.Ct. 205, 209-10, 96 L.Ed. 183 (1952).

7. *Dyer Construction Company v. Stokely*, 512 P.2d 112 (Okl.1973).